IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**MAXINE UNDERWOOD,**
**Claimant Below, Petitioner**

**FILED**
**January 10, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 22-ICA-98       (JCN: 2020026380)**

**WEST VIRGINIA DEPARTMENT OF**
**HEALTH AND HUMAN RESOURCES,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Maxine Underwood appeals the August 19, 2022, order of the Workers' Compensation Board of Review ("Board"). Ms. Underwood's employer, Respondent West Virginia Department of Health and Human Resources ("DHHR"), filed a timely response.[1] Ms. Underwood did not file a reply brief. The issue on appeal is whether the Board erred in affirming the Office of Judge's ("OOJ") April 15, 2022, order. The OOJ order affirmed the March 18, 2021, order of the claim administrator which granted a 0% permanent partial disability ("PPD") award to Ms. Underwood for the injuries she suffered on June 25, 2020.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the lower tribunal's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Underwood worked for DHHR as a Recreation Specialist. On June 25, 2020, she sustained injuries to her right shoulder, right elbow, right knee, and head when she tripped and fell over the cord of an alarm clock while working.

On July 16, 2020, the claim administrator held the claim stemming from Ms. Underwood's June 25, 2020 fall compensable for a closed head injury, concussion without loss of consciousness, strain of her right shoulder, sprain of her right elbow, and abrasion of her right knee.

On August 14, 2020, Ms. Underwood underwent a physical therapy evaluation at Raleigh General Hospital. The evaluation noted that she reported headaches and right

---

[1] Petitioner is represented by Reginald D. Henry, Esq. and Lori J. Withrow, Esq. Respondent is represented by Jillian L. Moore, Esq. and Steven K. Wellman, Esq.

shoulder pain. It was further noted that Ms. Underwood was guarding her right shoulder and elbow against movement.

On October 6, 2020, an MRI of Ms. Underwood was performed. Dr. Joseph Lambert noted that the MRI showed no definite evidence of adhesive capsulitis.

On October 7, 2020, Gordon Holen, D.O., performed a right shoulder arthroscopy on Ms. Underwood due to her limited active and passive range of shoulder motion. Once anesthesia was administered, Dr. Holen was able to passively forward elevate Ms. Underwood's shoulder to about 140 degrees and externally rotate to about 45 degrees. Dr. Holen noted that it appeared that the majority of the motion loss was secondary to guarding from significant pain. The post operative diagnosis was severe right shoulder pain with failed conservative care, right shoulder degenerative anterosuperior labral tear, right shoulder impingement syndrome with large subacromial spur, and right shoulder partial thickness rotator cuff tear.

On October 9, 2020, Ms. Underwood returned to Raleigh General Hospital for physical therapy. The report notes that she insisted on stopping the exercises with the right shoulder after minimal movement. The report further notes that she had very little range of motion with her right elbow due to guarding and pain.

On December 1, 2020, a physical therapy assessment noted that Ms. Underwood was apprehensive to move her right shoulder and elbow. She reported increased pain with all movement and resisted movement at times.

Sometime between January 18, 2021, and January 28, 2021,[2] Dr. Holen performed a manipulation and evaluation of Ms. Underwood under anesthesia and administered a subacromial cortisone injection. Dr. Holen noted forward elevation of 140 degrees out of 170 degrees, full external rotation, and that internal rotation was minimally tight toward the iliac crest. Dr. Holen was eventually able to manipulate Ms. Underwood's shoulder to 170 degrees, which was symmetric to her contralateral side.

A total of four independent medical examinations ("IME") were performed on Ms. Underwood. The first was performed by Jennifer L. Lultschik, M.D., on February 1, 2021. Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993), Dr. Lultschik found that Ms. Underwood had reached maximum medical improvement for her injuries and found that she sustained 0% whole person impairment. Regarding the head injury, Dr. Lultschik noted that Ms. Underwood

---

[2] It is unclear from the record when exactly this procedure occurred. The date of procedure is blank on Dr. Holen's Operative Report, though the Report was electronically signed by him on January 28, 2021. DHHR's Response Brief indicates that the procedure was performed on January 18, 2021.

had normal neurological findings during the exam and there were no findings that support a diagnosis of a head injury more severe than a concussion, the symptoms for which resolve within three months at most. Dr. Lultschik opined that Ms. Underwood's report of symptoms regarding the head injury more than seven months after the incident more than likely was due to symptoms that have the same prevalence in the general population as in concussed populations. In regard to the right knee, the right shoulder, and right elbow, Dr. Lultschik determined Ms. Underwood's examination was invalid due to nonorganic behaviors and inconsistencies. Dr. Lultschik noted that Ms. Underwood exhibited guarding and declination of passive or active movement of her right shoulder and elbow during the exam. Dr. Lultschik also noted numerous inconsistencies in the behavior of Ms. Underwood while she was being evaluated versus when she was unaware she was being observed. For instance, while Ms. Underwood reported an inability to extend her right knee or to flex it more than 80 degrees, Ms. underwood was observed sitting with both knees flexed more than 90 degrees. Likewise, Ms. Underwood exhibited full extension of the elbow as she got on and off the exam table and flexed her elbow while writing but declined to extend or flex her elbow during the formal range of motion exam. Dr. Lultschik further noted the absence of muscular atrophy in Ms. Underwood's right shoulder which was inconsistent with Ms. Underwood's reported inability to move the shoulder for a considerable time.

By order dated March 18, 2021, the claim administrator granted Ms. Underwood a 0% PPD award for her injuries sustained on June 25, 2020. Ms. Underwood protested.

On June 9, 2021, Ms. Underwood underwent a second IME performed by Bruce Guberman, M.D. Dr. Guberman recommended an 18% impairment of the upper extremity due to range of motion abnormalities in Ms. Underwood's right shoulder. Dr. Guberman recommended 2% impairment of the upper extremity for range of motion abnormalities in her right elbow. Adding the impairment of the right shoulder and right elbow together, Dr. Guberman recommended 20% impairment of the upper extremity of Ms. Underwood. Dr. Guberman then subtracted 1% from this rating based on arthritic changes found in the uninvolved, uninjured left shoulder for a total upper extremity impairment rating of 19%, which equaled an impairment rating of 11% for the whole person based on the shoulder and elbow injuries. In regard to the right knee, Dr. Guberman recommended 8% impairment of the whole person for range of motion abnormalities. However, since Ms. Underwood had previously been found to have 4% impairment of the whole person for the right knee due to a work injury that occurred in 2012, Dr. Guberman subtracted 4%, for a total of 4% impairment for the whole person based on the right knee injury. In regard to the head injury, Dr. Guberman found 0% impairment for the whole person. Dr. Guberman recommended a total 15% impairment of the whole person for the injuries sustained on June 25, 2020. Dr. Guberman noted that the evaluation by Dr. Lultschik was performed only ten days after Ms. Underwood had received manipulation of her right shoulder under anesthesia and a cortisone injection by Dr. Holen. He opined that at the time, Ms. Underwood had not completed her physical therapy or recovered from the procedure

performed by Dr. Holen and therefore had not achieved maximum medical improvement, which contributed to the inability to obtain adequate testing of Ms. Underwood's right upper extremity.

On August 5, 2021, Ms. Underwood underwent a third IME performed by Michael Kominsky, D.C. Dr. Kominsky recommended an impairment rating of 17% for the upper extremity due to abnormal range of motion in Ms. Underwood's right shoulder. Dr. Kominsky then subtracted 1% due to the arthritic changes found in the uninjured, unaffected left shoulder for a total impairment of 16% for the upper extremity. Dr. Kominsky recommended 4% impairment of the upper extremity for the right elbow. Adding the impairment of the right shoulder and right elbow together, Dr. Kominsky found 20% impairment of the upper extremity, which converted to 12% impairment of the whole person. In regard to the right knee, Dr. Kominsky recommended 8% impairment of the whole person based on 10-degree flexion contracture. Dr. Kominsky subtracted the 4% impairment for the 2012 injury for a 4% total whole person impairment for the right knee. In regard to the head injury, Dr. Kominsky recommended 2% whole person impairment based on ongoing transient headaches, throbbing and burning throughout Ms. Underwood's right eye and head, and occasional periods of loss of balance. Dr. Kominsky recommended a total 18% impairment of the whole person for the injuries sustained on June 25, 2020.

On November 30, 2021, Ms. Underwood underwent a fourth IME performed by David Soulsby, M.D. In regard to the head injury, Dr. Soulsby concluded that there was no evidence of any cognitive dysfunction or persistent ocular dysfunction related to the head injury sustained by Ms. Underwood and therefore 0% impairment was appropriate. In regard to the right shoulder, Dr. Soulsby noted the history of guarding throughout the life of the claim that continued during his examination. He also noted an absence of muscular atrophy. Dr. Soulsby concluded that examination of the right shoulder was not valid due to these inconsistencies and found that 0% impairment was appropriate. In regard to the right elbow, Dr. Soulsby discussed inconsistencies during the examination such as the demonstrated active motion at the elbow and actual motion at the elbow when Ms. Underwood was not aware that she was being evaluated. Dr. Soulsby concluded that due to these inconsistencies, the examination of the right elbow was not valid and therefore the appropriate rating was 0%. In regard to the right knee, Dr. Soulsby noted that Ms. Underwood demonstrated motion from 0 to 112 degrees of flexion, normal alignment, and no flexion contracture. He noted that these findings are better than the mild category of impairment and therefore the appropriate rating for the right knee was 0%. Dr. Soulsby noted that the numerous inconsistencies suggested that Ms. Underwood may be exaggerating or magnifying her symptoms. He further noted that he agreed with the evaluation performed by Dr. Lultschik.

On April 15, 2022, the OOJ affirmed the claim administrator's decision. The OOJ considered all four evaluations and noted that Dr. Guberman and Dr. Kominsky did not

discuss Ms. Underwood's guarding, which is significant when making range of motion measurements. The OOJ found that the evaluations of Dr. Lultschik and Dr. Soulsby were the most persuasive and concluded Ms. Underwood failed to show, by a preponderance of the evidence, that she was entitled to a greater PPD award that the 0% she was granted by the claim administrator. The Board affirmed the OOJ's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

On appeal, Ms. Underwood argues that the preponderance of the evidence establishes that she sustained more than 0% PPD from the injuries that occurred on June 25, 2020, and therefore the Board was clearly wrong in affirming the OOJ. Specifically, Ms. Underwood asserts that the OOJ should have either given more weight to the reports of Drs. Guberman and Kominsky than the reports of Drs. Lultschik and Soulsby or should have given the reports equal weight thereby requiring resolution in favor of Ms. Underwood's position pursuant to West Virginia Code § 23-4-1g (2003). DHHR responds that Ms. Underwood simply disagrees with the Board's disposition of her claim, which does not constitute reversible error.

After review, we find no error. The OOJ properly weighed the evidence in accordance with West Virginia Code § 23-4-1g(a) and found the reports of Drs. Lultschik and Soulsby to be more persuasive. Pursuant to West Virginia Code §23-4-1g(a), the OOJ is required to assess the relevance, credibility, materiality, and reliability that the evidence possesses when weighing the evidence. The record demonstrates a consistent history of guarding and self-limiting behavior by Ms. Underwood, as well as behavior inconsistent with her reported symptoms. Such issues, which were not considered by Drs. Guberman and Kominsky, clearly affect the reliability of the evaluations and the resulting recommendations. Accordingly, the OOJ was not clearly wrong to find the reports and

recommendations of Drs. Lultschik and Soulsby more persuasive and the Board was not clearly wrong in affirming the OOJ.

Finding no error in the Board's order affirming the OOJ, we affirm.

Affirmed.

**ISSUED:** January 10, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen

Judge Thomas E. Scarr, not participating